IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-CR-344-RAH-KFP |
| | ) | |
| LONNIE DONTAE MITCHELL | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Upon consideration of Defendant's Motion to Suppress (Doc. 145), the Magistrate Judge RECOMMENDS that the motion be DENIED, as set forth below:

## **I.  INTRODUCTION**

Defendant is charged by a ten-count indictment with seven counts of human trafficking and three counts of interstate travel for illegal sex acts. Doc. 55. As part of the investigation leading up to Defendant's arrest, Special Agent Richard Holston of ALEA obtained search warrants for residences on Yarbrough Street and Cotton Street in Montgomery, Alabama. Defendant's pending motion challenges the search warrant for the residence located on Yarbrough Street.[1] When the search warrants were executed, Defendant was arrested for possession of a firearm and ammunition after having previously been convicted of a felony, in violation 18 U.S.C. § 922(g), and he was ultimately convicted of that charge. *See United States v. Mitchell*, 2:20-CR-224-RAH (M.D. Ala. 2020).[2]

---

[1] As the Government notes, Defendant's motion mentions the Cotton Street search warrant in general terms at times, but his motion specifically sets forth the "probable cause" language in the Yarbrough search warrant. See Doc. 145 at 5–6.

[2] Documents in Case No. 20-CR-244 are cited as "922(g) Case" documents.

Defendant filed a suppression motion in that case also, arguing the following with respect to the Yarbrough Street search warrant:

1. There was no reasonable basis to eliminate the Fourth's Amendment requirement of "knock and announce."

2. The factual allegations in the search warrant application were insufficient to establish probable cause to believe evidence of a crime would be located at the Yarbrough Street residence based on the following:

   a. No information was provided as to the reliability or veracity of any of the three unnamed individuals who allegedly provided information to the agent;

   b. No time frame was given for the basis for the purported relevant knowledge of the three informants; and

   c. The search warrant application failed to support allegations of specific criminal activity.

3. Execution of the warrant exceeded the scope of the warrant because:

   a. The warrant did not authorize seizure of property that was not stolen or paperwork that did not indicate criminal activity or indicia of occupancy or residency or ownership of the premises; and

   b. Certain property was listed on a search inventory as having been located at a "vacant residence" with no other description, and the warrant did not identify this place as a place to be searched.

See 922(g) Case Doc. 27 at 4–11. For the Cotton Street warrant, which was a "knock and announce warrant," Defendant asserted arguments 2(a)–(c) above, as well as argument 3 above relating to non-stolen property. Id. at 13–15. However, he later withdrew his challenge to the Cotton Street warrant based on the Government's representation that they did not plan to use evidence seized at the Cotton Street address in the trial of the 922(g) case. See 922(g) Case Docs. 45 at 3, 50 at 3.

Following a two-part evidentiary hearing, the Magistrate Judge recommended granting Defendant's motion based on a finding that the Yarbrough Street warrant affidavit did not provide a substantial basis for the state court judge to find probable cause and that warrant was so obviously lacking in indicia of probable cause that official belief in the validity of the search warrant was entirely unreasonable, precluding application of the good-faith exception of *United States v. Leon*, 468 U.S. 897, 923 (1984). *See* 922(g) Case Doc. 65 at 30–33, 35.

The government filed objections to the recommendation, and, after a de novo review, the District Judge issued an order rejecting the recommendation in part and denying the motion to suppress. *See* 922(g) Case Docs. 88, 118, and 119.[3] In doing so, the District Judge agreed that the warrant affidavit "did not provide a *substantial* basis for the state court judge to find probable cause to issue the warrant," (922(g) Case Doc. 119 at 6 (emphasis in original)) but disagreed with the Magistrate Judge's finding regarding the third exemption to the *Leon* good-faith exception (that the affidavit was so obviously lacking in indicia of probable cause that official belief in the validity of the search was unreasonable). After finding that the third exemption did not apply, the District Judge found that Agent Holston had an objectively reasonable belief in the existence of probable

---

[3] After issuing its original order and in response to a motion seeking clarification filed by Defendant, the Court issued a separate order stating that Agent Holston's testimony regarding the first individual's statement that sex-for-money acts occurred at Yarbrough Street residence was inconsistent with his subsequent acknowledgement that he had no information from anyone that a sex-for-money act occurred at Yarbrough Street. *See* 922(g) Case Docs. 114, 118 at 3. The Court amended its original order accordingly, but the amendment did not change the Court's ruling on the suppression motion. *See* 922(b) Case Doc. 119.

cause when executing the warrant. *Id*. at 9–13. Thus, the *Leon* good-faith exception applied, and the Court denied Defendant's suppression motion. *Id*. at 12–13.

In a separate order, the District Judge addressed Defendant's argument that the search warrant exceeded the scope of the warrant. *See* Doc. 117. The Court found that the list of items to be seized was sufficiently particular and, even if the warrant was overbroad or did not establish probable cause, the good-faith exception to the exclusionary rule applied, as the agent testified that the officers seized the evidence because the items were suspected stolen or obtained with illegal goods. *Id*. at 3–4. Further, given the nature of the investigation, the warrant's identification of the items to be seized would not have alerted a reasonable agent to be concerned about the validity of the state court judge's authorization to search for the items. *Id*. at 4.

## II.   DEFENDANT'S PENDING MOTION TO SUPPRESS

### A.   Defendant's Request for a *Franks* Hearing

As an initial matter, although Defendant's instant motion is titled as a request for a *Franks* hearing, the body of the motion seeks suppression of evidence seized and statements obtained as the result of an allegedly illegal search. Under *Franks v. Delaware*, 438 U.S. 154 (1978), when a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id*. at 155–156. However, the defendant must make a substantial *preliminary* showing that (1) the affiant "made intentionally false or recklessly

4

misleading statements (or omissions)," and (2) "those statements are 'necessary to probable cause.'" *U.S. v. Barsoum*, 763 F.3d 1321, 1328 11th Cir. 2014) (quoting *Franks*, 438 U.S. at 155–156). The showing "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. (citing *Franks*, 438 U.S. at 171).

Here, Defendant makes a general accusation that Agent Holston misrepresented material facts and withheld information, but he identifies no specific misrepresentations and has made no offer of proof with respect to any allegedly false statements. Defendant cites *Franks* for the proposition that the burden of establishing a search warrant is defective rests on the defendant (*see* Doc. 145 at 13), but there is otherwise no reference to *Franks*, no acknowledgment of the requirements for a *Franks* hearing, and no analysis or argument as to how Defendant has met those requirements. Therefore, the undersigned concludes that the Defendant did not intend to request a *Franks* hearing but, instead, only seeks suppression of the evidence based on the arguments discussed below.

B. **Defendant's Suppression Arguments**

Defendant argues that (1) the affidavit submitted in support of the search warrant issued by a state court judge did not on its face contain sufficient information to establish probable cause and (2) reliance by the affiant on the judge's probable cause determination was not objectively reasonable or founded in good faith. Doc. 145 at 1. Specifically, he contends that the affiant knowingly misrepresented some of the "few material facts" in the application for the search warrant, withheld information that "would have negated indicia of probable cause," and executed the search warrant without corroborating information submitted by alleged confidential informants despite having never obtained dependable

5

information from these individuals in the past. *Id*. at 1–2. He further asserts that a "no-knock" entry should not have been authorized, objects to the seizure of property that was not stolen, and objects to the seizure of paperwork that did not indicate criminal activity or occupancy or ownership of the home. Doc. 145 at 4.

In short, although Defendant's instant motion differs slightly in language and organization, he raises the exact same issues here as he did in the 922(g) case, and the District Judge has already issued a ruling resolving those issues. Most of Defendant's motion focuses on the issue of probable cause with respect to the Yarbrough warrant affidavit (Doc. 145 at 4–22), but the District Court has already agreed with Defendant—and the Magistrate Judge who held the evidentiary hearing—that it did not provide a *substantial* basis for the state court judge to find probable cause (*see* 922(g) Case Doc. 119 at 6). After the probable cause argument, Defendant asserts that Agent Holston should have known the affidavit lacked critical facts as to the offenses alleged and that he could not have relied on the warrant in good faith when searching the residences on Yarbrough or Cotton Street.[4] Doc. 145 at 22. The District Judge's order resolved this issue as well.

First, as set forth above, the District Judge discussed the third exemption to the *Leon* good-faith exception and explained in detail the factual basis for his conclusion that the warrant was *not* so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. *See* 922(g) Case Doc. 119 at 8–9. Second, the Court turned to the

---

[4] Again, Defendant's motion mentions the Cotton Street warrant at times, but the probable cause language addressed in the motion comes from the Yarbrough Street warrant.

question of good faith and set forth in detail the factual basis for its determination that Agent Holston reasonably relied on the existence of probable cause:

> During the suppression hearing, Agent Holston testified that he was aware Mitchell had a prior robbery conviction, as well as a charge against him for being a person forbidden from possessing a firearm. Beginning in 2020, the first individual listed in the affidavit gave multiple statements to Agent Holston and/or other law enforcement officers. This first individual reported that she stayed with Mitchell, B.J. (another female), and the second individual, in the Yarbrough residence, that Mitchell subjected her to sex-for-money acts, that he provided her narcotics in return for performing the acts, and that she was required to give money that she earned from the acts to Mitchell or another female. In addition to reporting that Mitchell, or at his direction another female, would physically beat girls who did not do what was expected of them, she also reported that the commercial sex acts ("plays") were set up through a website called "Skip the Games" She also provided a statement that the distribution of narcotics occurred in the residence on multiple occasions over several months. She also commented that she believed that the third individual was her "replacement." The agent's understanding was that the first individual left the residence in April 2020.
>
> Agent Holston also testified about an undercover operation on September 12-13, 2020. An undercover officer responded to an ad on the Skip the Games website and arranged for a meeting at a hotel. When B.J. arrived with the second and third individuals at the hotel, law enforcement officers took them into custody and brought them to the police command center for questioning. The second individual reported that the heroin found in her wallet came from "our house" on Yarbrough Street. She also told an officer that B.J. took away her social security card at Mitchell's direction.
>
> The third individual provided multiple statements, including a formal interview as well as comments to the takedown officer and an informal discussion with Agent Holston after her interview. The third individual told the takedown officer that she was on a video chat with Mitchell at the time they were taken into custody. Agent Holston also testified that, through his investigation, he learned that it was common for Mitchell to video chat with one of the females in the room when a sex-for-money act was committed. At

some point, the third individual told Agent Holston that Mitchell normally had a firearm, that she managed the narcotics transactions for Mitchell, and that the drugs were kept in and sold from the Yarbrough residence. During the early morning hours of the investigation on September 13, 2020, this third individual also stated that she had been at the Yarbrough residence within the last 24 hours. Agent Holston also obtained information from the third individual's phone. On the night of the undercover operation, Agent Holston found multiple message threads where she was engaged in a conversation with Mitchell about narcotics transactions, plays, and "moneys coming in and going out."

*Id*. at 9–12 (internal citations omitted). Based on the above, the District Court stated that it was "clear from Agent Holston's testimony regarding the knowledge he received during the course of his investigation, including multiple statements from the individual women, a review of the web site, and cell phone records, that he had reason to believe there was a connection between Mitchell and the Yarbrough residence and that ongoing criminal activity was occurring there." *Id*. at 12. Thus, the Court concluded that a reasonably well-trained officer would have relied on the warrant, that the *Leon* good faith exception applied, and that Defendant's suppression motion was due to be denied. *Id*. at 12–13.

Having reviewed the Defendant's instant motion, which raises the same issues already addressed by the District Judge, as well as the Government's response and the documents related to the suppression motion filed in the 922(g) case, the undersigned adopts the District Judge's findings and conclusions, as set forth in 922(g) Case Docs. Docs. 117 and 119, and RECOMMENDS that Defendant's Motion to Suppress in this case (Doc. 145) be DENIED.

### C. The Cotton Street Warrant

As explained above, the Defendant's pending Motion to Suppress mentions the Cotton Street warrant, but his motion quotes the language of the Yarbrough Street warrant affidavit when arguing that probable cause was not established. To the extent Defendant intended to challenge the Cotton Street warrant affidavit, however, the undersigned finds that the District Judge's reasoning with respect to the Yarbrough Street warrant applies equally to the Cotton Street warrant.

Assuming that the Cotton Street warrant affidavit, which is similar to the Yarbrough Street warrant affidavit, did not provide a substantial basis for the state court judge to find probable cause, the undersigned finds that the *Leon* good-faith exception would still apply. The Cotton Street warrant affidavit states that Agent Holston met with an individual who had visited the residence during a time she was completing sex-for-money jobs at the instruction of Mitchell. 922(g) Case Doc. 41-2 at 4. Monies from illegal narcotics violations and sex trafficking, along with firearms, could be seen at any given time at the residence. *Id.* Vehicles were being registered to the address and had been seen stored in the rear yard of the address. *Id.* One of the vehicles was in police custody as the result of an operation two days earlier on September 13, 2020, and contained documents linked to the Cotton Street address. *Id.* A second individual said she had personally observed Defendant taking items from a nearby residence or vehicle into this residence during a time that she was completing sex-for-money jobs at the instruction of Mitchell. *Id.* The residence is Defendant's former residence and the current residence of his biological mother. *Id.* Mitchell stored monies and personal items of evidentiary value in this residence away from

9

the working girls under the protection of his mother. *Id.* Mitchell does not work and uses this residence as a staging and stash house. *Id.*

As with the Yarbrough Street warrant, while the Cotton Street affidavit may have lacked some specificity, it stated that an individual had visited the residence during a time she was completing sex-for-money jobs, money and firearms were in the residence, and vehicles being used were registered to the address and stored in the rear yard. In states that a vehicle taken into custody from the undercover operation contained documents linked to the address, that Mitchell used to live there, that his biological mother still lived there, that Mitchell had been seen taking items from nearby properties and vehicles to the address during a time that the second individual was performing sex-for-money jobs, and that he stored money and personal items there to keep them away from the working girls. Therefore, as with the Yarbrough warrant, it would be reasonable for an officer to believe that Mitchell used this residence and that ongoing criminal activity occurred there. Thus, the undersigned cannot conclude that the warrant affidavit was so lacking in an indicia of probable cause as to render belief in its existence entirely unreasonable.[5]

---

[5] In *Leon*, the Court identified four situations in which suppression would not be appropriate: (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923. In the 922(g) case, the Magistrate Judge found the third exemption applied. The District Judge disagreed, but, because the Yarbrough and Cotton Street affidavits are so similar, the undersigned has considered whether the third exemption applies. The remaining exemptions have not been raised, and the Court is aware of no facts warranting their consideration.

If a court finds that no exemption applies, it then turns to the question of good faith.[6] The good faith exception requires a court to determine whether a reasonably well-trained officer would know that the warrant was illegal despite a judge's authorization. *Leon,* 468 U.S. at 922 n.23. Here, Agent Holston's testimony cited by the District Judge when considering the Yarbrough Street warrant affidavit is sufficient to establish Agent Holston's good faith with respect to the Cotton Street warrant. First, Agent Holston knew about Mitchell's robbery conviction and charge of illegal possession of a firearm. He was aware of and had participated in an interview with an individual who said Mitchell subjected her to sex-for-money acts in exchange for narcotics and that money and firearms were present in the Cotton Street residence. He knew about the undercover operation on September 12–13, 2020, and the arrest of the individuals who arrived at the hotel for a sex-for-money act. In addition to what those individuals said about firearms, sex-for-money acts, and narcotics at the Yarbrough Street address, the vehicle taken into police custody as part of the undercover operation—the vehicle driven by the individuals who arrived at the hotel to complete the sex-for-money transaction—contained documents linking it to the Cotton Street address. When the Court considers this information, as the District Judge previously found with respect to the Yarbrough warrant, it is clear from Agent Holston's testimony about what he learned during his investigation that he had reason to believe there was a connection between Mitchell and the Cotton Street address and that ongoing criminal activity was occurring there. Accordingly, considering the totality of the circumstances,

---

[6] *See U.S. v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) ("Now that we have determined that none of the four exceptions to the *Leon* good faith exception apply in this case, we must make an inquiry as to whether [the officer] reasonably relied upon the search warrant.")

11

the undersigned finds that a reasonably well-trained officer would have relied on the warrant. *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990) (stating that the court "subscribe[s] to a standard which is focused on a reasonably well-trained officer and is based upon the totality of the circumstances," which is consistent with the purpose of the exclusionary rule and the good faith exception's purpose to deter police misconduct rather than punish the errors of judges and magistrates). Therefore, to the extent the Defendant intended to challenge the Cotton Street warrant, the *Leon* good faith exception applies, and Defendant's motion is due to be denied.[7]

## III.   CONCLUSION

For the reasons stated above, the Magistrate Judge RECOMMENDS that Defendant's Motion to Suppress (Doc. 145) be DENIED.

Further, it is ORDERED that by **June 6, 2022**,[8] the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or

---

[7] Additionally, although Defendant makes a general challenge to the scope of the warrant and the seizure of non-stolen property and documents that did not relate to ownership or residence, he makes no specific argument about the areas searched or the property seized at the Cotton Street premises. Defendant raised this argument in his suppression motion filed in the 922(g) case. The District Court ruled that, given the nature of the crimes being investigated, the warrant was sufficiently particular and the warrant's identification of the items to be seized would not have alerted a reasonable agent to be concerned about the validity of the state circuit court judge's authorization to search for the items. Because the descriptions of the items to be searched were identical on the Yarbrough Street and Cotton Street warrants, to the extent Defendant intended to assert a challenge to the scope and execution of the Cotton Street warrant, the District Court's reasoning with respect to the Yarbrough Street warrant would apply. *See* 922(g) Case Doc. 117.

[8] Defendant filed his Motion to Suppress on May 16, 2022. Because his trial is set for June 13, 2022, and the District Judge needs time to consider this Recommendation after objections are filed, the objection period has been shortened from the usual fourteen days to ten days.

general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 27th day of May, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE